RECEIVED
IN LAKE CHARLES, LA
APR 29 2009
TONY R. MOORE, CLERK
WESTERN DISTRICT OF LOUISIANA

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

| | |
|---|---|
| ANTHONY C. PITRE<br>LA. DOC # 475323 | CIVIL ACTION NO. 08-1894<br>SECTION P |
| VS. | JUDGE MINALDI |
| NATHAN CAIN, ET AL. | MAGISTRATE JUDGE KAY |

### REPORT AND RECOMMENDATION

*Pro se* plaintiff Anthony C. Pitre, proceeding *in forma pauperis*, filed the instant civil rights complaint pursuant to 42 U.S.C. § 1983 on December 2, 2008. Plaintiff is an inmate in the custody of Louisiana's Department of Public Safety and Corrections (LDOC); he is incarcerated at the C. Paul Phelps Corrections Center (PCC), DeQuincy, Louisiana. Plaintiff claims that he is "being forced to work well beyond [his] physical capability" in violation of the Eighth Amendment's proscription of cruel and unusual punishment. He sued PCC's Deputy Warden Nathan Cain and PCC's staff physician Dr. John Crawford. He requests injunctive relief (a transfer to either the Forcht-Wade Corrections Center or the David Wade Corrections Center) and an order prohibiting his future confinement at PCC; the issuance of "no duty" or "light duty" status; and unspecified amounts of nominal, punitive, and compensatory damages. On January 20, 2009, plaintiff requested immediate injunctive relief – an order directing the defendants to afford plaintiff "no duty with bed rest" status pending the resolution of this complaint. Doc. 4.

This matter has been referred to the undersigned for review, report, and recommendation in accordance with the provisions of 28 U.S.C. § 636 and the standing orders of the court. For the following reasons it is recommended that the complaint, including plaintiff's claims for monetary and injunctive relief, be **DISMISSED WITH PREJUDICE** as frivolous.

*Background*

Plaintiff is an inmate in the custody of the LDOC. He has previously been diagnosed with HIV and medication has been prescribed and provided to him. On June 9, 2008, he was transferred to PCC.

On June 10, 2008, plaintiff informed PCC's Deputy Warden Cain and Dr. Crawford that he would no longer take the HIV medication "as a direct result of being 'returned' to PCC . . . ." Plaintiff made this decision to stop taking medication notwithstanding his knowledge that his "health would deteriorate very rapidly causing [him] to be overcome by fever, loss of appetite, and extreme fatigue; in addition to [his] CD-4 count becoming dangerously low and [his] viral load becoming dangerously high causing [him] to be susceptible to various opportunistic infections such as pneumonia, esophageal candidiasis, salmonella, wasting syndrome, etc . . . ." Doc. 1, ¶IV, at 3, 5.

On June 12, 2008, plaintiff was assigned to Farm Line 7 by the job classification board. He was directed to work the "gun line" in the agricultural field using hand tools (rakes and hoes), and to "goose pick" in the temperatures of 100 – 103 degrees Fahrenheit. On that same day, plaintiff complained to Deputy Warden Cain that he was being forced to work beyond his physical and medical limitations. He also wrote a complaint to Dr. Crawford requesting light duty status with frequent breaks. On July 27, 2008, Nurse Arrant responded to plaintiff's letter stating, "Dr. Crawford has reviewed your medical records and has found no reason to change your duty status to light duty. If you have had a change in your medical condition that Dr. Crawford is unaware of you can make a routine sick call." Doc. 1, ¶IV, at 4-5; *see also* Doc. 1-3, at 17.

2

On July 16, 2008, plaintiff was summoned to a meeting with Jeffery Norred; Norred re-classified plaintiff from Farm Line 7 to CYO Lawnmower Crew. According to plaintiff, this assignment forces him to "push 150 lb. home-made, substandard lawnmowers specially designed to punish the operator in extreme heat . . . ." Plaintiff claims that when he protested, Norred replied, "Warden Cain was the one who gave [plaintiff the] job change so that [plaintiff] would be closer to medical when [he fell] out dead." Doc. 1, ¶IV, at 5.

On July 17, 2008 plaintiff received a letter from Deputy Warden Cain which advised,

> You are dealing with unnecessary pain and suffering, as well as cruel and unusual punishment. The problem is that you are bringing it on yourself, as you plainly state in your letter, written in your own hand. I recommend that you start taking your medicine, and I am sure you will feel better. I am sorry you are sick, but you not taking your medicine is not my fault, as you seem to think it is.
>
> You working on the gun line is no different than anyone else working there as far as I am concerned. You are no better or worse than anyone else. . . . Nevertheless . . . since you have been on the gun line for a little while . . . I will allow you to move to another job.
>
> However . . . you are sick because you are making a choice not to take your medication, so, in a sense, your sickness is your own fault. If you make yourself sick, then you are making a choice, and I will not feel responsible . . . .

Doc. 1-3, at 12.

On August 14, 2008, plaintiff made a routine sick call and again requested light duty status with frequent breaks. During the examination plaintiff complained to Nurse Comeaux that he was suffering from extreme fatigue, dizziness, fever, and sore throat. Comeaux took plaintiff's vital signs and confirmed high blood pressure, fever, swollen glands and an inflamed uvula.[1] Plaintiff's request for light duty status was not denied, and an appointment was made with Dr. Crawford for August 18, 2008. Doc. 1, ¶IV, at 5-6. On August 18, 2008, plaintiff was

---

[1] Uvula is the small tongue-shaped piece of tissue that hangs from the top of the back part of the mouth. *See* Medline Plus Encyclopedia, at http://www.nlm.nih.gov/medlineplus/ency/article/001257.htm.

examined by Dr. Crawford who took plaintiff's pulse and listened to plaintiff's chest with a stethoscope. He advised plaintiff that he was ordering blood tests. Dr. Crawford also refused to adjust plaintiff's duty status. Doc. 1, ¶IV, at 6.

On August 22, 2008, a blood sample was drawn. Dr. Crawford adjusted plaintiff's duty status to restricted him from playing sports. Doc. 1, ¶IV, at 6; *see also* Doc. 1-3, at 19.

On August 25, 2008, plaintiff again complained to Deputy Warden Cain that he was "being made to suffer as a direct result of being forced to work well beyond my physical capability (medical limitation) . . . ." Doc. 1, ¶IV, at 4-5. According to plaintiff, Deputy Warden Cain failed to respond reasonably. Doc. 1, ¶IV, at 5.

On October 30, 2008, plaintiff made another routine sick call. Nurse Louis took plaintiff's vitals and confirmed that plaintiff's blood pressure was high and that he had fever, dizziness, and chronic fatigue. Plaintiff was transported to Moss Regional Hospital in Lake Charles, then returned to PCC. He was then admitted to the prison infirmary. He remained in the infirmary until November 3, 2008 when Dr. Crawford reviewed his medical file and discharged him back to "full duty" on the CYO Lawnmower detail. Doc. 1, ¶IV, at 6.

On the same day, approximately 15-20 minutes after he returned to the dormitory from the infirmary, plaintiff was discovered "passed out" on the floor. He was again transported to Moss Regional and then returned to PCC where he was again admitted to the prison infirmary. Doc. 1, ¶IV, at 6.

On November 12, 2008 Nurse Burke took plaintiff's vitals and again confirmed high blood pressure, fever, dizziness and fatigue. Nevertheless, Dr. Crawford ordered plaintiff to return to "full duty" status. Doc. 1, ¶IV, at 6.

4

Plaintiff submitted grievances on July 12, 2008 [doc. 1-3, at 2] and August 14 and 18, 2008 [doc. 1-3, at 3]. These grievance were answered on September 30, 2008 by Joe Ruebush, Assistant Warden for Treatment, as follows:

> You were seen during intake by Ms. Garrick on 6/9/08. During your interview you stated to her that you did not want to be at PCC. You stated your preference of DWCC or FWCC. You stated anywhere except PCC claiming you had too much time to be here. You also told Ms. Garrick you would refuse your HIV medications unless you were transferred.
>
> On 6/10/08 you were seen by Dr. Crawford and the nursing staff as part of intake. During your initial interview with the nurse you stated you wanted to refuse all of your medications and future treatment 'until shipped from Phelps.' Dr. Crawford explained the risks of not taking your HIV medications and you still refused. Mr. Nocilla, R.N., Shift Supervisor also discussed the need to take your medications, lab work, and the Comprehensive Care Clinic (HIV Clinic). You refused all care. On intake you signed a document showing you had been informed orally and in writing on how to obtain medical care, pill call times, how to file a grievance, and was given the opportunity to ask questions.
>
> The Intra-Institutional Health Screen for FWCC showed a regular duty status with no kitchen duty.
>
> On 6/24/08 Deputy Warden Cain informed you that if Sheriff Melancon wants you transferred he will have to request it. The request will be sent to Headquarters where they will approve or deny.
>
> On 6/27/08 Ms. Arrant, Assistant Director of Nurses, informed you that Dr. Crawford had reviewed your medical record and found no reason to change your duty status to light duty. You were informed that if you had any changes in your medical condition you are able to make routine sick call.
>
> On 7/12/08 Deputy Warden Cain again wrote you a letter based on your allegations that you were being caused unnecessary pain and suffering as well as cruel and unusual punishment. At the time you were working on a gun line. Deputy Warden Cain granted you a job change from the gun line to CYO. Deputy Warden Cain noted that you are not taking your medications by your own choice. According to Jeffery Norred it was you who stated, 'in case I fall over dead.' You interrupted him while he was explaining the job change was to place you on the compound in case you needed help of any kind.
>
> It is clear you refused your medications for HIV and all medical care during the intake process. You refused your medications prior to any job assignment or

5

> issuance of any type of duty status. Neither Dr. Crawford nor Mr. Nocilla could convince you to take your medications. It is clear in your statements to Ms. Garrick and Ms. Lee, LPN that you were going to refuse your medications to gain a transfer. You have made no sick calls since your arrival and intake on 6/9/08. There is no evidence of deliberate indifference by any staff member at PCC. You were given a job on the compound in an effort to work with you. You freely chose to refuse your medications despite medical staff encouraging you to do the right thing and take your medications . . . .
>
> On 8/14/08 you requested to see the Doctor stating you felt flushed with no energy. You also stated 'they kidnapped me from Forcht Wade.' You requested a light duty status. HIV lab work was ordered.
>
> I will not take the time to encourage you to take your medication and allow the medical staff to get you seen by the CCC staff. You are only hurting yourself. Refusing medical care is not the desired way of seeking a special job or transfer . . . .

Doc. 1-3, at 4-5.

According to plaintiff, he appealed to the LDOC Headquarters on October 3, 2008, but, as of December 2008 he had received no response. Doc. 1-3, at 6.

*Law and Analysis*

*1. Screening*

When a prisoner seeks redress from a governmental entity or from an officer or employee of a governmental entity, the court is obliged to evaluate the complaint and dismiss it without service of process, if it is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant who is immune from such relief. *See* 28 U.S.C. §1915A; 28 U.S.C. § 1915(e)(2); *Ali v. Higgs*, 892 F.2d 438, 440 (5th Cir. 1990). A claim is frivolous if it lacks an arguable basis in law or in fact. *Booker v. Koonce*, 2 F.3d 114, 115 (5th Cir. 1993).

6

A hearing need not be conducted for every *pro se* complaint. *Wilson v. Barrientos*, 926 F.2d 480, 483 n.4 (5th Cir.1991). A district court should be able to dismiss as frivolous a significant number of prisoner suits on the complaint alone. *Green v. McKaskle*, 788 F.2d 1116, 1120 (5th Cir.1986).

District courts must construe *in forma pauperis* complaints liberally, particularly in the context of dismissals under § 1915(e)(2)(B), but are given broad discretion in determining when such complaints are frivolous. *Macias v. Raul A. (Unknown) Badge No. 153*, 23 F.3d 94, 97 (5th Cir. 1994). A civil rights plaintiff must support his claims with specific facts demonstrating a constitutional deprivation and may not simply rely on conclusory allegations. *Schultea v. Wood*, 47 F.3d 1427, 1433 (5th Cir. 1995). A district court is bound by the allegations in a plaintiff's complaint and is "not free to speculate that the plaintiff 'might' be able to state a claim if given yet another opportunity to add more facts to the complaint." *Macias v. Raul A. (Unknown) Badge No. 153*, 23 F.3d at 97.

Plaintiff has provided detailed facts in support of his claim that the defendants' acted with deliberate indifference toward him. Further amendment would serve no useful purpose.

## 2. Deliberate Indifference

The Thirteenth Amendment permits involuntary servitude without pay as punishment after conviction of an offense, even when the prisoner is not explicitly sentenced to hard labor. *Ali v. Johnson*, 259 F.3d 317, 318 (5th Cir. 2001); *Murray v. Miss. Dep't of Corr.*, 911 F.2d 1167, 1167-68 (5th Cir. 1990); *Wendt v. Lynaugh*, 841 F.2d 619, 620-21 (5th Cir. 1988). Thus, convicts can be required to work. *See Moody v. Baker*, 857 F.2d 256, 257 (5th Cir.) (per curiam). A work assignment alone does not rise to a constitutional violation. *Id. (citing Meachum v. Fano*,

427 U.S. 215, 96 S. Ct. 2532, 49 L. Ed. 2d 451 (1976)). Further, the refusal to work presents a threat to the orderly administration of the prison system and unjustified refusal is rightly answered with sanctions or discipline. *Mendoza v. Lynaugh*, 989 F.2d 191, 194 (5th Cir. 1993).

Nevertheless, "if a prison official assign[s] an inmate to work detail . . . know[ing] that such an assignment could exacerbate a serious physical ailment, then such a decision could constitute deliberate indifference" in violation of the Eighth Amendment. *Mendoza v. Lynaugh*, 989 F.2d 191, 194 (5th Cir. 1993).

Plaintiff, by his own admission, was aware that, should he cease taking the HIV medication prescribed, "[his] health would deteriorate very rapidly causing [him] to be overcome by fever, loss of appetite, and extreme fatigue; in addition to [his] CD-4 count becoming dangerously low and [his] viral load becoming dangerously high causing [him] to be susceptible to various opportunistic infections such as pneumonia, esophageal candidiasis, salmonella, wasting syndrome, etc . . . ." Doc. 1, ¶ IV, at 3, 5.

Plaintiff apparently ceased taking his medication upon his arrival at PCC in June 2008. However, prior to this event, his medical records indicated that he was able to perform any prison work without restriction.[3] Deputy Warden Cain and Dr. Crawford were permitted to rely on these prior medical records in making plaintiff's first job assignment to the "gun line."

Further, when plaintiff complained that he was no longer able to do that work, he was reassigned within one-month of his arrival at PCC. Thereafter, the defendants and others repeatedly implored him to resume the medication regimen which had previously helped him to stay in good health and prevented the various symptoms about which he now complains.

---

[3] See the July 27, 2008 correspondence from Nurse Arrant: "Dr. Crawford has reviewed your medical records and has found no reason to change your duty status to light duty. If you have had a change in your medical condition that Dr. Crawford is unaware of you can make a routine sick call." Doc. 1, at 4, 5; *see also* Doc. 1-3, at 17.

8

Nevertheless, plaintiff claims that the defendants acted (and continue to act) with deliberate indifference toward him. A claim of deliberate indifference based on an inmate's work assignment is actionable only when a prison official assigns an inmate to a job that the official knows would "significantly aggravate" the inmate's serious medical needs. *Jackson v. Cain*, 864 F.2d 1235, 1246 (5th Cir. 1989)(citing *Black v. Ciccone*, 324 F. Supp. 129, 133 (W.D. Mo. 1970). From the outset, plaintiff was aware of the results that were certain to follow should he discontinue his medication. Nevertheless, with full knowledge of those effects, he chose to discontinue an admittedly successful course of treatment. All of the deleterious symptoms experienced by plaintiff, and complained of herein, were caused by his refusal to participate in the therapeutic plan offered by the defendants; his current symptoms were neither caused nor even exacerbated by the defendants. Plaintiff, has been, as the saying goes, "hoist by his own petard"[4] and this attempt to blame his current predicament on the defendants is absurd. A ruling in plaintiff's favor herein would encourage him to continue on this self destructive path.

### *3. Conclusion and Recommendation*

Plaintiff's complaint is patently frivolous and dismissal on that basis is appropriate.

**IT IS RECOMMENDED THAT** plaintiff's civil rights complaint and his requests for monetary and injunctive relief be **DISMISSED WITH PREJUDICE** as frivolous in accordance with the provisions of 28 U.S.C. § 1915(e)(2)(B).

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have ten (10) business days from service of this report and recommendation to file specific, written objections with the Clerk of Court. A party may

---

[4] *Hamlet*, Act III, Scene 4, lines 206-07, "For 'tis the sport to have the engineer / Hoist with his own petard" In common usage the phrase means to fall into one's own trap.

9

respond to another party's objections within ten (10) days after being served with a copy of any objections or response to the district judge at the time of filing.

**Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within ten (10) days following the date of its service, or within the time frame authorized by Fed. R. Civ. P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error.** *See, Douglass v. United Servs. Auto. Ass'n,* 79 F.3d 1415 (5th Cir. 1996).

Thus done and signed in chambers in Lake Charles, Louisiana this __ day of April, 2009

_____
KATHLEEN KAY
UNITED STATES MAGISTRATE JUDGE